IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____
                                              )
SEAN PARNELL, et al.                          )
                                              )
       Plaintiffs,                           )     No. 2:20-cv-01570-NR
                                              )
   v.                                         )
                                              )
ALLEGHENY COUNTY BOARD OF                     )
ELECTIONS, et al.,                            )
                                              )
       Defendants.                           )
_____)


**BRIEF OF *AMICI CURIAE*
AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA;
COMMON CAUSE-PENNSYLVANIA; AND
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
IN SUPPORT OF
DEFENDANTS' OPPOSITION TO MOTION
FOR TEMPORARY RESTRAINING ORDER**

**INTERESTS OF *AMICI CURIAE***

*Amici* are civil-rights and public-interest organizations committed to protecting all citizens' right to vote and to free and fair elections.

The American Civil Liberties Union of Pennsylvania (ACLU-PA) is the Pennsylvania affiliate of the American Civil Liberties Union (ACLU), a nationwide, nonprofit, nonpartisan organization with over 1,500,000 members dedicated to defending the principles embodied in the Constitution and our nation's civil rights laws. The ACLU-PA has over 35,000 members. Protecting the right of every eligible citizen to vote and overcoming structural impediments to voters' exercise of the franchise are important aspects of the ACLU-PA's mission. The organization devotes substantial resources to advancing and defending voting rights. In recent years, the organization has successfully challenged Pennsylvania's voter ID law[1] and a restriction on the Commonwealth's nomination-petition process for minor-party candidates.[2] Additionally, since 2004 the ACLU-PA has worked with other non-profit, non-partisan organizations as part of a nationwide "election protection" effort to help voters overcome obstacles to voting and to ensure that elections are administered fairly and according to the rule of law, including by assisting voters who call into the 866-OUR-VOTE nationwide hotline, operated by the Lawyers Committee for Civil Rights Under Law. The ACLU-PA's non-partisan, election-protection efforts are already underway for the upcoming November 2020 election.

---

[1]  *See Applewhite v. Commonwealth*, 2012 WL 3332376 (Pa. Commw. Ct. Aug. 15, 2012) (denying preliminary injunction); 54 A.3d 1 (Pa. 2012) (vacating and remanding for supplemental trial); 2012 WL 4497211 (Pa. Commw. Ct. Oct. 2, 2012) (granting preliminary injunction after emergency hearing); 2014 WL 184988 (Pa. Commw. Ct. Jan. 17, 2014) (declaring statute unconstitutional and permanently enjoining enforcement); 2014 WL 2619590 (Pa. Commw. Ct. Apr. 28, 2014) (denying post-trial motions).

[2]  *In re Stevenson*, 40 A.3d 1212 (Pa. 2012).

Common Cause Pennsylvania represents roughly 36,000 members from across the Commonwealth and encourages civic engagement and public participation in the democratic process to ensure that public officials and institutions are accountable to the people that elected them. Common Cause Pennsylvania has been a leader in the statewide nonpartisan Election Protection Coalition for at least the last three major election cycles, including 2020. In that role, Common Cause works to ensure that every voter, regardless of race, ethnicity, or zip code is able to cast a vote in the election. This includes voter education, advocacy, and recruiting, training, and deploying hundreds of volunteers on Election Day.

The Lawyers' Committee for Civil Rights Under Law was formed in 1963 at the request of President John F. Kennedy to involve private attorneys throughout the country in the effort to ensure civil rights to all Americans. Promoting and defending the voting rights of African Americans and other racial minorities, through both advocacy and litigation, is an important part of the Lawyers' Committee's work. The Lawyers' Committee has represented litigants in dozens of voting rights cases throughout the nation over the past 50 years.

*Amici* limit their argument to the merits of Plaintiffs' alleged constitutional claims. *Amici* do not address other salient issues, such as standing, which seemingly pose substantial obstacles to relief, but we do not intend our silence on these matters to suggest that Plaintiffs' arguments to this court are anything but fatally flawed in other ways, too.

**ARGUMENT**

**I.      The Board of Elections' Rules and Conduct Do Not Violate the Elections Clause.**

The Elections Clause provides that "[t]he Times, Places, and Manner of holding Elections for Senators, Representatives, shall be prescribed in each State by the Legislature thereof …." U.S. Const. art. I, § 4, cl.1.  In Count I of their complaint, Plaintiffs allege that "[t]he Board of Elections usurped the powers of the Pennsylvania legislature by unilaterally rewriting the Elections Code in violation of the Elections Clause."  Compl. ¶ 86.  The claim is meritless.

Plaintiffs apparently contend that, under the Elections Clause, no entity or official other than the State Legislature may enact or modify rules governing a federal election.  That contention is squarely foreclosed by the Supreme Court's decision in *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 135 S. Ct. 2652 (2015).  There, the Court held that "Legislature," as used in the Elections Clause, means the "power that makes laws" consistent with a state's constitution and encompasses the people of Arizona's exercise of the initiative process authorized by the Arizona Constitution.  *Id*. at 2671; *see also Corman v. Torres*, 287 F. Supp. 3d 558, 573 (M.D. Pa. 2018) ("The Supreme Court interprets the words 'the Legislature thereof' as used in [the Elections Clause], to mean the lawmaking processes of a State."). Having equated the people's lawmaking through initiative with the exercise of legislative authority, the Court held that "the people may delegate their legislative authority over redistricting to an independent commission just as the representative body may do."  *Ariz. State Legislature*, 135 S. Ct. at 2671.  Thus, any argument that the Pennsylvania Legislature may not delegate its lawmaking function with respect to federal elections fails under controlling Supreme Court authority.  *See Corman*, 287 F. Supp. 3d at 573 ("The Elections Clause … affirmatively grants rights to state legislatures, and under Supreme Court precedent, to other entities to which a

state may, consistent with the Constitution, delegate lawmaking authority."); *see also Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC (D. Nev. Apr. 30, 2020), 2020 WL 2089813, *8 (finding that the Nevada Legislature properly delegated its authority under the Elections Clause to the secretary of state).

A state's discretion to delegate lawmaking authority to entities and officials other than the "legislature" itself is consistent with "[t]he dominant purpose of the Elections Clause," which is "to empower Congress to override state election rules, not to restrict the way States enact legislation." *Ariz. State Legislature*, 135 S. Ct. at 2672. Respecting the authority of the Pennsylvania Legislature to delegate its lawmaking authority to others, including local elections officials such as the county Boards of Elections, is consistent with the Supreme Court's admonition that "it is characteristic of our federal system that States retain autonomy to establish their own governmental processes." *Id.* at 2673; *see also id.* at 2677 ("[T]he Clause surely was not adopted to diminish a State's authority to determine its own lawmaking processes.").

In *Arizona State Legislature*, the Supreme Court emphasized that the strict, legislature-only interpretation of the Elections Clause advanced there by the Arizona Legislature, and mirrored here by Plaintiffs, would cast doubt on "a host of regulations governing the 'Times, Places and Manner' of holding federal elections." *Id.* at 2676. The "manner" of holding elections "encompasses matters like 'notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns." *Cook v. Gralike*, 531 U.S. 510, 523-524 (2001) (quoting *Smiley v. Holm*, 285 U.S. 355, 366 (1932). Were state legislatures prohibited by the Elections Clause from delegating their authority to issue rules, regulations and policies filling in the details of election administration, a host of state regulations governing the

5

"time, place, and manner" of federal elections would be invalidated. The Pennsylvania Legislature has delegated substantial authority over the conduct of just about every aspect of the electoral process to county boards of elections, including the authority "[t]o make and issue such rules, regulations, and instructions, not inconsistent with law, as they may deem necessary for the guidance of … elections officers …." 25 P.S. § 2642(f).[3]

Here, the premise underlying plaintiffs' argument that poll watchers must be allowed at satellite election offices is fatally flawed because state law confers on political parties the authority to have poll watchers at "polling places," 25 P.S. § 2687, not at elections board offices. Satellite elections offices are an extension of the elections board offices, not polling places, where people "vote," which means poll watchers have no rights under Pennsylvania law to insinuate themselves in non-public places at satellite offices. One state court has already rejected the argument that poll watchers have a right under Pennsylvania law to engage in poll watching activities at satellite election offices. *See Donald J. Trump for President v. Philadelphia County Bd. Of Elec,* No. 02035 (Oct. 9, 2020, Phil. Ct. Com. Pl.). Regardless whether the Pennsylvania legislature has delegated authority over this issue to the Secretary or the counties, neither such a delegation of authority nor the Board's exercise of such authority would violate the Elections Clause.

---

[3] Plaintiffs' Elections Clause theory at times goes beyond the claim the county boards cannot set policies, to the point of arguing that if a county board does *anything* in violation of the Election Code, it has violated the Elections Clause. For example, Plaintiffs argue that the Board violated the Elections Code by reissuing non-provisional ballots to certain electors. Compl. ¶¶ 66-67. (*Amici* do not agree the Board did anything wrong, but that goes beyond the scope of this brief.) If Plaintiffs were correct that any supposed misadministration of Pennsylvania's Election Code by a county board creates an Elections Clause violation, federal courts would become inundated with all manner of picayune election-administration disputes that belong in state courts.

## II.     Plaintiffs' Equal Protection Claim Is Meritless

Plaintiffs' Count II, under the Equal Protection Clause, is nothing more than window dressing for an effort to have this Court adjudicate the sort of state-law issues from which the Court has already prudently abstained. *See Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-cv-966, 2020 WL 5997680 (W.D. Pa., Oct. 10, 2020).

At the outset, it must be stressed that the complaint does not allege any burden on or disparate treatment concerning *the right to vote*. There is no allegation or evidence that any citizen's right to cast their ballot has been burdened or discriminated against in any way. To the contrary, the only interference with anyone's right to vote arises from Plaintiffs' effort to have more than 28,000 Pennsylvania citizens disenfranchised by having their ballots deemed "challenged," without Plaintiffs satisfying the statutory prerequisites to a challenge, and then, presumably, disallowed.

Plaintiffs complain, not about anyone's right to vote, but only about their purported right to have poll watchers present at satellite offices of the Board of Elections. This Court and others have recognized, however, that there is no constitutional right to be or have poll watchers: that "State law, not the Federal Constitution, grants individuals the ability to serve as poll watchers and parties and candidates the authority to select those individuals." *Donald J. Trump for President*, 2020 WL 5997680, at 67; *see also Republican Party of Pennsylvania v. Cortes*, 218 F.Supp.3d 396, 414 (E.D. Pa. 2016) (same); *Cotz v. Mastroeni*, 476 F.Supp.2d 332, 364 (S.D.N.Y. 2007) (holding that poll watching "has no distinct First Amendment protection"); *Turner v. Cooper*, 538 F.Supp. 1160, 1162 (N.D. Ill. 1983) ("[W]e would suggest that the state is not constitutionally required to permit poll watchers for political parties and candidates to

7

observe the conduct of elections. Illinois has chosen to do so, but [plaintiff's] right to be present at the polling place derive[s] solely from state law."

Thus, there is no substantive constitutional right implicated by the Board of Elections' decision not to allow poll watchers at satellite offices. For that reason, Plaintiffs' entire discussion of the *Anderson-Burdick* balancing test with respect to burdens on First and Fourteenth Amendment rights is, in this context, irrelevant. *See* Plaintiffs' Brief at 7-10.

Plaintiffs' discussion of their purported equal protection claim, Plaintiffs' Brief at 14-15, itself demonstrates that the claim is meritless. They assert that "[i]n the instant case, there is differential treatment between the Satellite Offices … and traditional voting precincts." *Id*. at 14. *They do not even claim that there is any differential treatment between or among different individuals or groups. No one may act as a poll watcher at a satellite office, whereas some may at polling places.* The Equal Protection Clause prohibits discrimination among similarly situated individuals or groups of individuals; it does not prohibit differentiation among different types of voting locations. Equal protection is simply not implicated by Plaintiffs' allegations.

Plaintiffs' concede, moreover, that, even if equal protection were implicated, the relevant test would be whether the Board of Elections "act[ed] in a rational and non-arbitrary fashion." *Id*. at 14. Then, without any further analysis, they assert that "Defendants' conduct with regard to poll watchers violates the Equal Protection Clause …" *Id*. *Amici* submit that the Board's decision not to allow poll watchers at additional Election Division offices that are being used "to make voter participation in the upcoming election more convenient and safer" is unquestionably neither irrational nor arbitrary.

8

## **CONCLUSION**

For all the foregoing reasons, *Amici* submit that Plaintiffs' Motion for Temporary Restraining Order should be denied.

Dated: October 22, 2020

Respectfully submitted,

*/s/ Witold J. Walczak*
Witold J. Walczak
PA ID No.: 62976

AMERICAN CIVIL LIBERTIES UNION
  OF PENNSYLVANIA
247 Fort Pitt Blvd.
Pittsburgh, PA 15222
412-681-7864
srose@aclupa.org
vwalczak@aclupa.org

*Attorney for Amici Curiae*

*Of Counsel*:

Jon Greenbaum
Ezra Rosenberg
Bradley Phillips
Lawyers' Committee for Civil Rights Under Law
1500 K Street N.W.
Washington, D.C. 20005
202-662-8600
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
bphillips@lawyerscommittee.org