IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SEAN PARNELL, *et al*,

          Plaintiffs,

    vs.

ALLEGHENY COUNTY BOARD OF
ELECTIONS, *et al*,

        Defendants.

_____

Civil Action No. 2:20-1570

**Judge J. Nicholas Ranjan**

**RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER**

## TABLE OF CONTENTS

A.  Standing – Plaintiffs Do Not Have It.................................................................3

  1. Standard for Standing...........................................................................4

  2. 1st Prong – Injury in Fact......................................................................4

  3. 2nd Prong – Injury Must Be Traceable to Defendants .........................6

  4. 3rd Prong – Must Be Likely Injury Will Be Remedied by Action ....................8

  5. Plaintiffs Cannot Satisfy Injury Requirement Via 3rd Party Standing ................8

B.  Laches – Plaintiffs' Delay in Action Bars This Motion ...................................10

C.  Constitutional Rights.....................................................................................11

  1. Plaintiffs Fail to Address Court's Order to Identify Rights Being Violated................11

  2. Plaintiffs' Claims Do Not Implicate U.S. Constitution..............................12

D.  Rational Basis Scrutiny Would Apply to Any Constitutional Claim............................13

E.  Four-Part Preliminary Junction Test ................................................................ 15

1. Requirement I – Likelihood of Success on the Merits.................................. 16

2. Requirement II – Irreparable Harm ................................................................ 23

3. Requirement III – Grant of Relief Will Not Do More Harm than Denying It .......................... 27

4. Requirement IV – Granting Relief is in the Public Interest ........................................... 27

Pursuant to this Court's Order (ECF #12) Defendants (hereafter "Allegheny County Defendants") file this response to Plaintiff Sean Parnell and Luke Negron's (hereafter "Messrs. Parnell/Negron") Motion for Temporary Restraining Order and supporting Brief[1].  (ECF # 2, #18.)  Messrs. Parnell/Negron seek an order that, the "Allegheny County Board of Elections is hereby enjoined from denying poll watchers access to their [*sic*] satellite voting locations."  (ECF # 2-1.)  As a matter of law, Messrs. Parnell/Negron have no entitlement to the relief they seek, and their Motion should be denied.

Preliminary injunctive relief is an "extraordinary remedy" and "should be granted only in limited circumstances." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).  "A temporary restraining order is a 'stay put,' equitable remedy that has its essential purpose the preservation of the status quo while the merits of the cause are explored through litigation." *J.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 273 (3d Cir. 2002) (*citations omitted*).

---

[1] Given the nature of the Motion and the relief sought, the Motion would more accurately be called a motion for preliminary injunction. The standard for granting a temporary restraining order under FED. R.CIV. P. 65(b) is the same as that for issuing a preliminary injunction. *Bieros v. Nicola*, 857 F.Supp. 445, 446 (E.D.Pa.1994).

In a case such as this where the primary purpose of the motion for relief is not to maintain the status quo, but in fact to obtain mandatory relief, the burden on the moving party is "particularly heavy." *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980). Messrs. Parnell/Negron's Motion does not seek to maintain the status quo. Instead, Messrs. Parnell/Negron seek relief that would order the Allegheny County Defendants to undertake an affirmative act; permit poll watchers at satellite offices. Moreover, that relief would grant Messrs. Parnell/Negron substantially all of the relief they seek in Count II. As such, the Third Circuit holds Messrs. Parnell/Negron to a heightened showing to obtain this relief. *Punnett*, 621 F.2d, 578, 582.

Messrs. Parnell/Negron have done nothing in their Motion or supporting Brief to satisfy the "particularly heavy" and heightened standard to which they are held. *Punnett*, 621 F.2d 578, 582 (3d Cir. 1980). Their Motion should be summarily denied.

## ANALYSIS

### A. Standing – Plaintiffs Do Not Have It

Article III of the Constitution, "limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies.'" *Hein v. Freedom from Religion Foundation, Inc.*, 551 U.S. 587, 597–98 (2007) *quoting DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). "The existence of a case and controversy is a prerequisite to all federal actions, including those for declaratory or injunctive relief." *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994). One element of this "bedrock requirement" of a case or controversy is that plaintiffs "must establish that they have standing to sue." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3rd Cir. 2011) *quoting Raines v. Byrd*, 521 U.S. 811, 818 (1997).

## 1. Standard for Standing

Article III standing requires that a plaintiff show:

1. he has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;
2. the injury is fairly traceable to the challenged action of the defendant; and,
3. it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 181 (2000) *citing*

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 –561(1992).

At the pleading stage, the plaintiff has the burden of establishing standing. *Lujan*, 504 U.S. at 561; *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003). Although "general factual allegations of injury resulting from the defendant's conduct may suffice," *Lujan, 504 U.S. at 561*, the complaint must still "clearly and specifically set forth facts sufficient to satisfy" Article III. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

## 2. 1st Prong – Injury in Fact

To satisfy the injury in fact element of Article III standing, a plaintiff's injury "must be concrete in both a qualitative and temporal sense." *Reilly v. Ceridian Corp.*, 664 F.3d at 42 *quoting* *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). Thus, "the complaint must allege an injury ... that is 'distinct and palpable,' as distinguished from merely 'abstract' and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* Allegations of "possible future injury" are not sufficient to satisfy Article III. *Id.*, *citing* *Whitmore, 495 U.S. at 158*, *Lujan, 504 U.S. at 564 n. 2* (stating that allegations of a future harm at some indefinite time cannot be an "actual or

imminent injury"). Instead, "'[a] threatened injury must be 'certainly impending,'" *Id.*, *quoting Whitmore,* 495 U.S. at 158 (*cleaned up*), and "proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all," *Id.*, *quoting Lujan,* 504 U.S. at 564 n. 2; *Whitmore,* 495 U.S. at 155 (explaining that the imminence requirement "ensures that courts do not entertain suits based on speculative or hypothetical harms"). Accordingly, a plaintiff "lacks standing if his 'injury' stems from an indefinite risk of future harms inflicted by unknown third parties." *Id.*, *quoting Lujan,* 504 U.S. at 564.

Furthermore, Article III standing is not a "forum for generalized grievances." *Lance v. Coffman,* 549 U.S. 437, 439 (2007). As the United States Supreme Court observed in *Lujan,*

> We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.

*Lujan,* 504 U.S. at 56-61.

Applying this well-established case law to the case at bar, the interest that Messrs. Parnell/Negron seek to vindicate in this case is not a personal interest. Count II does not state that a concrete and definite harm such as voter fraud[2] or illegal voting will personally befall them if poll watchers are not allowed at the satellite offices. Rather, Messrs. Parnell/Negron that they

---

[2]  The legal viability of the notion that poll watchers were necessary to prevent voter fraud is questionable in light of the Pennsylvania Supreme Court's decision of *Pennsylvania Democratic Party v. Boockvar,* No. 133 MM 2020, --- A.3d ---, 2020 WL 5554644 (Sept. 17, 2020, Pa.) In that case, the Court rejected the claim that "poll watchers are vital to protect against voter fraud. *Id.* at * 30.

bring this action for the purpose of "ensuring that the integrity of this year's election is upheld at the Satellite Offices in Allegheny County." (ECF #1, *Complaint*, ¶ 11.)  This averment fails to meet the requirement of alleging distinct and palpable harm needed for Article III standing.  Instead, Messrs. Parnell/Negron's averment is a mere statement that they wish to see that the law is followed.  Longstanding case law does not recognize standing based upon the assertion of an interest common to all members of the public.  *Tyler v. Judges of Registration*, 179 U.S. 405, 406 (1900) ("[E]ven in a proceeding which he prosecutes for the benefit of the public ... [the plaintiff] must generally aver an injury peculiar to himself, as distinguished from the great body of his fellow citizens").

### 3.  2nd Prong – Injury Must Be Traceable to Defendants

The allegations seeking a poll watcher's certificate are so muddled and confusing that it is impossible to discern whose interest (other than the general public interest) is alleged to be at stake in this case.   The Court is well aware that the ability to become and to select a poll watcher is controlled by state law.  *Trump for President, Inc. v. Boockvar*, 20-cv-966,  --- F.Supp.3d ---, 2020 WL 5997680, * 7(Oct. 10, 2020, W.D.Pa.).

The Pennsylvania Election Code entitles each candidate for nomination or election at any election to appoint two watchers for each election district in which the candidate is voted for. 25 P.S. § 2687(a).  Additionally, the Election Code entitles each political party and each political body to appoint three watchers at any general, municipal or special election for each election district in which candidates of such party or political body are to be voted for. *Id.*

In this case, Messrs. Parnell/Negron aver that they, "desire to have poll watchers at the

Satellite Offices." (ECF #1, *Complaint*, ¶ 61.) They aver that a Mr. Chew and a Mr. Hagerman "attempted to obtain poll watchers certificates on October 14 and 15, 2020, but were refused." (*Id.*, at ¶ 62.) This refusal is purported evidenced by affidavits and correspondence attached as Exhibit B to the Complaint. *(ECF #1-2.)*

The authorization for Mr. Chew and for Mr. Hagerman to obtain poll watching status, however, is not to serve as poll watchers for Messrs. Parnell/Negron. The authorization is to serve as poll watchers for the Republican Party of Pennsylvania. (*Id.*)

That the Election Code does not allow poll watching at satellite offices is confirmed by two sources. The Secretary of the Commonwealth issued guidance to the county boards of election that poll watchers are not permitted at satellite voting locations. GUIDANCE CONCERNING POLL WATCHERS AND AUTHORIZED REPRESENTATIVES (October 6, 2020)[3]. Further, the plaintiffs in the *Trump for President v. Boockvar, et. al.*, 20-CV-996, admitted this in their amended complaint. (*Trump for President v. Boockvar, et. al.*, 20-CV-996, ECF #232. *Amended Complaint*, ¶ 178.) "Pennsylvania law does not speak to the ability of poll watchers to be present at the other locations that were used to collect mail-in and absentee ballots for the Primary Election." (*Id.* ¶ 181.) For these reasons Messrs. Parnell/Negron lack standing because the injury purported is not fairly traceable to the challenged action of the County Defendants.[4]

---

[3]https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/Poll%20Watcher%20Guidance%20Final%20
2010-6-2020.pdf.

[4] Whether the denial of poll watching certificates is an injurious event is traceable to actions of the County Defendants is legally problematic. The text of the Election Code limits poll watching to polling places in election districts on election day. *See*, 25 P.S. §2687 (b) ("Each watcher so appointed shall be authorized to serve in the election district for which the watcher was appointed"). Under the Election Code, a polling place is "the room provided in each election district for voting at a primary or election." 25 P.S. § 2602(q). An "election district" is the area "within which all qualified electors vote at one polling place." *Id.* § 2602(g). And "voting at a

### 4. 3rd Prong – Must Be Likely Injury Will Be Remedied by Action

To meet the redressability requirement, a plaintiff must establish that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *New Jersey Peace Action v. Obama, 379 F. App'x 217, 221 (3d Cir.2010)* (*citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560,(1992)*).  In this case, Messrs. Parnell/Negron have not suffered any injury that can be redressed because they did not seek to have Mr. Chew or Mr. Hagerman serve as poll watchers.  As Mr. Chew and Mr. Hagerman note in their letters attached to the Complaint, they were authorized to serve as poll watchers for the Republican Party of Pennsylvania, an entity that is not a party.  (ECF #1-3.) Thus, the remedy sought does not address a concrete and specific harm suffered by Messrs. Parnell/Negron.  Therefore, Count II  fails to satisfy the redressability prong needed to confer Article III standing.  Moreover, it is mere speculation that Messrs. Parnell/Negron's actual alleged injury would be redressed by the relief they seek.

### 5.  Plaintiffs Cannot Satisfy Injury Requirement Via 3rd Party Standing

Messrs. Parnell/Negron assert that they bring this action on behalf of themselves and "on behalf of all citizen electors of Allegheny County."  (ECF #1, *Complaint* ¶¶ 26, 27.) In addition to asserting an Equal Protection claim upon an impermissible assertion of an interest common to all members of the public, Messrs. Parnell/Negron seek to assert third party rights in violation of prudential limitations on the exercise of federal jurisdiction over third-party claims.

---

primary or election" is in-person voting that takes place on a single day. *See generally* 25 P.S. art. IV (setting forth the day for each election); *see also id.* § 3046 (election court "on the day of each primary and election"); *id.* § 3048(a) (poll workers meet at their polling place before the "opening the polls on the day of each primary and election").

It is a well-established tenet of standing that a "litigant must assert his or her own legal rights and interests and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991); *see also*, *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 474–75; *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 538 (3d Cir. 1994). This principle is based on the assumption that "third parties themselves usually will be the best proponents of their own rights," *Singleton v. Wulff*, 428 U.S. 106, 114 (1976) (plurality opinion), which serves to foster judicial restraint and ensure the clear presentation of issues. *Sec'y of State v. Joseph H. Munson Co.*, 467 U.S. 947, 955 (1984).

Nevertheless, the prudential limitation on third party standing is not an absolute bar. Third-party standing is allowed under certain circumstances. In *Pennsylvania Psychiatric Soc. v. Green Spring Health Services, Inc.*, 280 F.3d 278 (3d Cir. 2002), the Third Circuit observed:

> The Supreme Court has found that the principles animating these prudential concerns are not subverted if the third party is hindered from asserting its own rights and shares an identity of interests with the plaintiff. More specifically, third-party standing requires the satisfaction of three preconditions: 1) the plaintiff must suffer injury; 2) the plaintiff and the third party must have a "close relationship"; and 3) the third party must face some obstacles that prevent it from pursuing its own claims. It remains for courts to balance these factors to determine if third-party standing is warranted.

*Id.* at 288-89 (*cleaned up*). In this case, the three-factor test for third-party standing set forth in *Pennsylvania Psychiatric* is not satisfied.

As discussed above, Messrs. Parnell/Negron do not have standing to pursue an Equal Protection claim. Second, there is no close relationship between the named Plaintiffs and the third party. The case from the First Circuit case relied upon the Plaintiffs, *Mancuso v. Taft*, 476 F.2d 187 (1st Cir. 1973) as supportive of their assertion of third-party standing is readily

distinguishable. In *Mancuso*, the plaintiff invoked third party rights because he was seeking to run for a public office and thus have an opportunity to present himself to the voters. Here, the Plaintiffs are well passed the threshold problem of candidacy for public office extant in *Mancuso*. Seeking to obtain poll watchers for satellite branch offices of the County Defendants enjoys no close relationship to the interest of ordinary citizens because the rights of ordinary citizen electors are not at stake or in any way vindicated by the failure to issue poll-watching certificates. Finally, there are no obstacles in the path of third parties pursuing a claim here. As stated earlier, the two individuals claiming denial of poll-watching certificates readily can seek relief.

In summary, Messrs. Parnell/Negron cannot overcome the initial threshold of having standing to pursue Count II. They have alleged no personal, concrete injury-in-fact to their personal legal interest. Rather, they seek to vindicate vague and generalized interests common to all members of the public. Messrs. Parnell/Negron attempt to assert generalized third-party rights violates the prudential limitation on third party standing. For these reasons, lack standing to bring their Motion for a temporary restraining order.

**B.     Laches – Plaintiffs' Delay in Action Bars This Motion**

Before addressing the merits of Messrs. Parnell/Negron's Motion, this Court should first address whether they unreasonably delayed in filing it. Messrs. Parnell/Negron's failure to timely file their Motion should "weigh decidedly" against granting the extraordinary relief they seek. *Republican Party of Pa. v. Cortes*, 218 F.Supp. 396, 404 (E.D.Pa. 2016).

In the present case, Messrs. Parnell/Negron waited 29 days after the Allegheny County Board of Elections passed the September 17, 2020 resolution providing for additional Elections

Division offices.  (ECF #1-2.)  These satellite offices have been in operation on October 10, 11, 17, and 18.  They are only in operation for two more days; October 24 and 25. (ECF #1-2.)

In *Republican Party*, the court was asked to decide a motion for preliminary injunction in a Pennsylvania elections case. Before addressing the four-prong test for a preliminary injunction, the court first found that the plaintiff Republican Party had forfeited the right to seek a preliminary injunction by waiting until 18 days before the election to bring its case.  *Republican Party of Pa. v. Cortes*, 218 F.Supp. 396, 405 (E.D.Pa. 2016).

*Republican Party* applies here.  Messrs. Parnell/Negron's 29-day delay, combined with two-thirds of the satellite office operations having already been completed, bars their Motion.

## C.  Constitutional Rights

### 1.  Plaintiffs Fail to Address Court's Order to Identify Rights Being Violated

This Court specifically ordered Messrs. Parnell/Negron to file a, "brief and supporting evidence" that addresses "whose constitutional rights are being violated and how."  (ECF # 12.) Nowhere in Messrs. Parnell/Negron's brief did they comply with this order.  (*See* ECF # 18, *generally*.)  Their failure to set forth their theory of liability and evidence in support is fatal to their request for relief.  It is solely a plaintiff's burden to set forth a cause of action and present facts and legal theories sufficient to support it.  Messrs. Parnell/Negron have done neither, despite the Court requiring they do so.

It is not up to a defendant in a case to attempt to articulate for plaintiff their cause of action, let alone present an argument in opposition to something that has not been set forth.  For these reasons, Messrs. Parnell/Negron's claim for Count II relief fails.

### 2. Plaintiffs' Claims Do Not Implicate U.S. Constitution

Plaintiffs' claim that, "Defendants conduct with regard to poll watchers violates the Equal Protection Clause of the 14th Amendment of the United States Constitution." (ECF #1, Complaint ¶ 90.) However, the concept of "poll watcher" is a creation of state law. 25 P.S. § 2687. Various courts, including this one, have already opined that no one has a Constitutional right to serve as a poll watcher. *Donald J. Trump for President, Inc. et al v. Kathy Boockvar et al, 20-cv-00966, --- F.3d. ---, 2020 WL 5997680, * 7, (Oct. 10, 2020, W.D.Pa.)* (Finding that there is no constitutional right to serve as a poll watcher and that instead poll watching is a creature of state law.). *See also Pennsylvania Democratic Party v. Boockvar*, No. 133 MM 2020, --- A.3d ---, 2020 WL 5554644, *30 (Sept. 17, 2020, Pa.) (holding "there is no individual constitutional right to serve as a poll watcher; rather, the right to do so is conferred by [state] statute."); *Republican Party of Pa. v. Cortes*, 218 F.Supp. 396, 414 (E.D.Pa. 2016) ("State law, not the Federal Constitution, grants individuals the ability to serve as poll watchers and parties and candidates the authority to select those individuals."); (*Turner v. Cooper*, 583 F.Supp. 1160, 1161-62 (N.D.Ill. 1983) (holding that the act of poll watching is not protected by the First Amendment); *Tiryak v. Jordan*, 472 F.Supp. 822, 824 (E.D.Pa. 1979) (suggesting that poll watchers are not constitutionally guaranteed components of the elections process but rather creatures of state election law); *Cotz v. Mastroeni*, 476 F.Supp.2d 332, 364 (S.D.NY 2007) (finding "this Court's independent search as discerned [no authority] for the proposition that an individual poll watcher possesses any actionable rights above and beyond those afforded any member of the general public that is present at a polling place.).

For this Court to have jurisdiction over Count II, there must be a federal question. There

is no federal question because there is no viable U.S. Constitutional claim.

**D.      Rational Basis Scrutiny Would Apply to Any Constitutional Claim**

Although Messrs. Parnell/Negron aver that the right to vote is fundamental (ECF #1, *Complaint* ¶ 32), they do not assert that the Allegheny County Defendant's failure to allow poll watchers at satellite offices hinders or infringes upon anyone's right to vote. Like the county residency requirement for poll watching that was at issue in *Donald J. Trump for President, Inc. et al v. Kathy Boockvar et al*, 20-cv-00966, --- F.3d. ---, 2020 WL 5997680, * 7, (Oct. 10, 2020, W.D.Pa.), the failure to allow poll watchers at satellite offices (or more accurately, limiting poll watching to poll places at election districts on Election Day) does not hinder the "exercise of the franchise." *Cortés*, 218 F. Supp. 3d at 408. It does not limit voters' "range of choices in the voting booth"—voters can still "cast ballots for whomever they wish[.]" *Id*. As this Court noted in *Trump*, "As Plaintiffs admit, the county-residency requirement doesn't make the actual act of casting a vote any harder." *Donald J. Trump for President, Inc. et al v. Kathy Boockvar et al*, 20-cv-00966, --- F.3d. ---, 2020 WL 5997680, * 67, (Oct. 10, 2020, W.D.Pa.). The same observation can be made in this case.

In determining whether a state election law violates the U.S. Constitution, a court must "first examine whether the challenged law burdens rights protected by the First and Fourteenth Amendments." *Patriot Party of Allegheny Cnty. v. Allegheny Cnty. Dep't of Elections*, 95 F.3d 253, 258 (3d Cir. 1996). "Where the right to vote is not burdened by a state's regulation on the election process, … the state need only provide a rational basis for the statute." *Cortés*, 218 F. Supp. 3d at 408. The same is true under an equal protection analysis. "If a plaintiff alleges only that a state

treated him or her differently than similarly situated voters, without a corresponding burden on the fundamental right to vote, a straightforward rational basis standard of review should be used." *Obama*, 697 F.3d at 428 (6th Cir. 2012); *see also Biener*, 361 F.3d at 214-15 (applying rational basis scrutiny where there was no showing of an "infringement on the fundamental right to vote."); *Donatelli*, 2 F.3d at 515 ("A legislative classification that does not affect a suspect category or infringe on a fundamental constitutional right must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." (cleaned up)).

Rational reasons justify allowing poll watchers at a polling place in an election district on election day and not allowing poll watchers at satellite offices. Watchers allowed in the polling place are permitted to keep a list of voters. Watchers may make good faith challenges to an elector's identity, continued residence in the election district, or qualifications as an eligible voter. 25 P.S. § 2687(b). Thus, the watcher at a polling place serves two purposes: to determine who or who not has voted so that his candidate or party can "get out the vote" and challenge the residence or qualification of a person presenting themselves in person to vote. 25 P.S. § 2687(b).

But at satellite election offices, these reasons for having a poll watcher do not exist. No list of voters need be taken (Election Code has a provision on generating a list of who has voted absentee or by mail – 25 P.S.§ 3146.8. More importantly, the need to confront a voter about eligibility to vote does not exist when a voter comes in person to submit a mail-in or absentee ballot. The County Board, through the Election Division, is connected to the SURE system and immediately can address any issue regarding the person's qualifications as an eligible voter. Proper identification must be presented by the person wishing to vote over-the-counter. This

information is checked through the SURE system to determine the eligibility of the individual presenting him/herself to vote by mail. Thus, the in-person appearance and the presence of the County Board of Election personnel supplants whatever putative fraud prevention role that the poll watchers would play at a polling place. *In re Canvass of Absentee Ballots of General Election*, 39 Pa. D. & C.2d 429, 431–32, 1965 WL 6179, at *2 (Pa. Com. Pl. Montgomery County 1965) ("'[I]n the casting of an absentee ballot, the ordinary safeguards of a confrontation of the voter by the election officials and watchers for the respective parties and candidates at the polling place are absent.'" (*quoting* In re Canvass of Absentee Ballots of April 28, 1964, Primary Election, 34 Pa. D. & C.2d 419, 420, 1964 WL 8463, at *2 (Pa. Com. Pl. Phila. County 1964)).

**E.      Four-Part Preliminary Junction Test**

To obtain a preliminary injunction, a plaintiff must satisfy a four-part test:

1.  A reasonable probability of success on the merits;
2.  The probability of irreparable harm if the relief is not granted[5];
3.  That granting injunctive relief will not result in even greater harm to the other party; and,
4.  That granting relief will be in the public interest.

*In re PennEast Pipeline Co., LLC*, 938 F.3d 96, 102 (3d Cir. 2019). *See also* *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir.1988); *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999) (setting forth the four part analysis preliminary injunction).

---

[5] *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 375-76, 172 L.Ed. 2d 249 (2008) (The Court held that the extraordinary nature of preliminary relief required a showing that irreparable harm was likely regardless of the strength of the plaintiff's case on the merits.).

Allegheny County Defendants' Response in Opposition to Motion for TRO - **15**

Despite this Court's Ordering Messrs. Parnell/Negron to file a brief to support their Motion for Temporary Restraining Order, and despite the clear law that they satisfy the four-prong test outlined above, to a heightened standard, Messrs. Parnell/Negron have failed to brief these requirements. On this basis alone, their Motion should be denied.

## 1. Requirement 1 – Likelihood of Success on the Merits

To establish a reasonable probability of success on the merits, the moving party must produce sufficient evidence to satisfy the essential elements of the underlying cause of action. *Punnett v. Carter*, 621 F.2d 578, 582–83 (3d Cir. 1980).

### a. *Plaintiffs Lack Standing and Cannot Prevail in this Case*

The Allegheny County Defendants have already set forth in Section A of this Response, *supra*, that Messrs. Parnell/Negron lack standing to pursue Count II of their Complaint. That argument is incorporated here by reference. The lack of standing makes it impossible for Messrs. Parnell/Negron to prevail on the merits of Count II.

### b. *There is No Constitutional Right to Have Poll Watchers*

The Allegheny County Defendants have already set forth in Section C(2) *supra,* that Messrs. Parnell/Negron do not have a Constitutional Right to have poll watchers. That argument is incorporated here by reference. Accordingly, Messrs. Parnell/Negron are unlikely to be successful on the merits of Count II.

### c. The Equal Protection Clause is Not Violated by Not Having Poll Watchers

The 14th Amendment's Equal-Protection Clause commands that, "no State shall ... deny to any person within its jurisdiction the equal protection of laws." U.S. Const. amend. XIV, § 1. Equal protection does not mean all forms of differential treatment are forbidden. *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992) ("Of course, most laws differentiate in some fashion between classes of persons. The Equal Protection Clause does not forbid classifications."). Instead, equal protection "simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Id.* The Equal Protection Clause, "is essentially a direction that all person similarly situated should be treated alike." *City of Cleburne, Tex. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed. 2d 313 (1985).

Messrs. Parnell/Negron have not set forth how they have been treated differently from other similarly situated people.  This failure means they have not satisfied a required element in their case.  Moreover, factually, Messrs. Parnell/Negron are not able to satisfy this requirement. The Allegheny County Defendants have not issued poll watcher certificates for any class of people for the satellite offices.  Thus, all persons are being treated the same.

Messrs. Parnell/Negron argue in their Brief that there is "differential treatment between the Satellite Offices… and traditional voting precincts [Election Day poll locations].  (ECF # 18, pg. 15.)  However,  a physical building cannot suffer a constitutional violation.  Nor can Messrs. Parnell/Negron pursue a constitutional claim in that regard.  They have no viable Equal Protection claim.

#### *d. Law Clear There Are No Poll Watchers Except of Election Day*

Messrs. Parnell/Negron are unlikely to prevail on the merits of the argument that satellite offices are "polling places." This issue has most recently been ruled upon by the Common Pleas Court of Philadelphia. *Donald J. Trump for President, Inc. v. Philadelphia County Board of Elections, et al.*, Control No. 20100256, Sept. Term, 2020 No. 02035 (Oct. 9, 2020, Ct. of Common Pleas, Phila. Co.) (A copy of the Opinion and Order is attached to this Response as Exhibit "A.") In *Trump v. Philadelphia*, the court held that satellite offices are not polling places under Pennsylvania elections law, and therefore no one has a right to poll watchers at these locations. This well-reasoned decision supports that Messrs. Parnell/Negron are unlikely to prevail on the merits.

Additionally, this Court, less than two weeks ago, addressed a principle similar to the issue presently before this Court; whether the Election Code, "considered drop boxes and other ballot-collection sites as "polling places," as defined in the Election Code. *Donald J. Trump for President, Inc. et al v. Kathy Boockvar et al*, 20-cv-00966, --- F.3d. ---, 2020 WL 5997680, * 5, (Oct. 10, 2020, W.D.Pa.). This Court has interpreted the Philadelphia state court decision as holding that, "satellite ballot-collection locations, such as drop-box locations, are not 'polling places,' and therefore poll watchers are not authorized to be present at these places." *Id.* *74. There is no intervening law or change of facts within in the past ten days from which this Court would alter that ruling.

In addition to the decisional law referred to here, Pennsylvania's Election Code – as detailed below - establishes that Messrs. Parnell/Negron do not have a meritorious Count II claim.

### 1. Election Law Establishes what is a Polling Location

Under the Election Code, a polling place is "the room provided in each election district for voting at a primary or election." 25 P.S. § 2602(q). An "election district" is the area "within which all qualified electors vote at one polling place." 25 P.S. § 2602(g). And "voting at a primary or election" is in-person voting that takes place on a single day. *See generally* 25 P.S. art. IV (setting forth the day for each election); *see also* 25 P.S. § 3046 (election court "on the day of each primary and election"); 25 P.S. § 3048(a) (poll workers meet at their polling place before the "opening the polls on the day of each primary and election").

What can or cannot be done at a polling place is subject to detailed regulation under the Election Code. *See generally* 25 P.S. arts. IV-V. Polling places do not open until 7 a.m. on Election Day and must remain open until 8 p.m. 25 P.S. § 3045. They must be staffed by poll workers, independently elected constitutional officers who must arrive before the polls open (25 P.S. § 3048(a), 25 P.S. § 2671), and are overseen by the district Judge of Elections. 25 P.S. § 3060(f). Voting operations at a polling place also are specifically detailed in the Election Code. Poll books must be delivered before election day, 25 P.S. 3044; 25 Pa.C.S. § 1402(d), and voters must sign into the poll book to vote at a polling place. 25 P.S. § 3050(a.3)(2). District poll workers are empowered to determine if a voter is eligible. 25 P.S. § 3053. Moreover, voters cannot remove ballots from polling places (25 P.S. § 3059), and once they have voted, cannot return to a polling place. 25 P.S. § 3060(a).

### 2. Election Law Establishes Use of Poll Watchers

As part of the in-person voting process, the Election Code enables candidates and parties

to appoint poll watchers to be at polling places and gives them a role to play at polling places on election day. 25 P.S. § 2687(b), 25 P.S. § 3050(a). These poll watcher provisions in the Election Code are detailed: a candidate must request and receive a watcher certificate from the Board of Elections authorizing each watcher to serve for the election district to which they are appointed (25 P.S. § 2687(b)); candidates are limited to two poll watchers for each election district in which the candidate will be on the ballot (25 P.S. § 2687(a)); and poll watchers must be residents of the county. 25 P.S. § 2687(b). As a result, watcher certificate requests must identify the electoral district for which that watcher is assigned. *Id*. Lastly, the Election Code specifies how many poll watchers can be present at a time (25 P.S. § 2687(b)) and gives the local judge of elections authority to manage the presence of poll watchers at a district polling place. 25. P.S. § 3060(f).

The Election Code also limits what a poll watcher can do at a polling place. Watchers allowed in the polling place are permitted to keep a list of voters. Watchers also may make good faith challenges to an elector's identity, continued residence in the election district, or qualifications as an eligible voter. These challenges are made to and decided by the district's judge of elections. 25 P.S. § 2687(b); 25 P.S. § 3053.


### 3. Election Law Establishes Absentee/Mail-in Balloting

The processes and procedures for voting by absentee or mail-in ballot are quite different from those for in-person voting. *See generally*, Election Code, 25 P.S. arts. XIII, XIII-D. Registered voters can apply for an absentee or mail-in ballot by mail, online, or in person at any board office, including satellite offices (25 P.S. § 3146.2(k), 25 P.S. § 3146.5(b)(2), 25 P.S. § 3150.12(g)(2)), but must provide proof of identification. 25 P.S. § 3146.2(e.2); 25 P.S. § 3150.12(a)(2). The county

board of elections must begin reviewing applications fifty days before the election and promptly deliver a ballot – by mail or in person – to all qualified voters. 25 P.S. § 3146.5(a)-(b)(2); 25 P.S. § 3150.15(a). The Election Code further provides candidates and parties with information for get out the vote and election integrity activities by making applications public records and requiring the Board to post a list of all voters sent ballots before Election Day. 25 P.S. § 3146.9; 25 P.S. § 3150.17; 25 P.S. § 3146.2c. The Election Code also details a process for challenges by the Friday before Election Day. 25 P.S. § 3146.2b; 25 P.S. § 3150.12b(a)(2)-(3); 25 P.S. § 3146.8(g)(5).

When voters apply for and receive an absentee or mail-in ballot, they can fill it out anywhere they want and can return it by mail or in person at a county board office (including satellite offices) or drop box. They cannot give it to poll workers at a polling place on Election Day. 25 P.S. § 3146.6(a); 25 P.S. § 3150.16(a). Also, they cannot vote at a machine at polling place on election day unless they surrender their absentee or mail-in ballot and envelope to be spoiled. 25 P.S. § 3146.6(b)(1); 25 P.S. § 3150.16(b)(1). The counting of mail-in and absentee ballots does not begin until Election Day. 25 P.S. § 3146.8(g)(1.1). Just as with ballot applications, campaigns may request lists of all voters whose ballots have been received. 25 P.S. § 3146.9; 25 P.S. § 3150.17.

### 4.  Election Law Establishes Satellite Offices

These mail-in ballot processes require that the county boards provide ballot request and ballot delivery services at their offices. The Election Code provides offices for voter registration and absentee and mail-in balloting services and permits county boards to have multiple satellite offices. 25 P.S. § 2645(b). Thus, Allegheny County residents can apply for absentee and mail-in ballots at satellite offices. 25 P.S. § 3146.5(b)(2). They can return the ballot to the Board by

personally delivering it to a satellite office. *Pa. Democratic Party v. Boockvar*, 133 MM 2020, --- A.3d --- , 2020 WL 5554644, at *10 (Sept. 17, 2020, Pa.). In fact, the Election Code requires the board to immediately process voter registration and absentee and mail-in ballot applications submitted in-person at any of its offices. All of which must be done before Election Day. 25 P.S. § 3146.5(b) (in-person ballot processing); 25 P.S. § 3146.2a(a) (absentee application deadline) 25 P.S. § 3150.12a(a) (mail-in ballot application deadline); 25 Pa. § 3071(b) and (e)(2) (in-person registration and deadline).

### 5. Election Law Establishes Watching of Mail-in Ballots at Pre-Canvas

Where Section 25 P.S. § 2687 of the Election Code allows for poll watchers to perform very specific functions at a polling place in an election district, the General Assembly did not provide any statutory authority for poll watchers to be present for any voting conducted as part of the mail voting process. The only "watching" permitted in the Election Code for voting by mail is at the pre-canvass meeting of the Board on Election Day. At that pre-canvassing, one authorized representative of each candidate at the election and one representative from each political party is permitted to be present at the place where the absentee and mail-in ballots are pre-canvassed. 25 P.S. 3146.8 (g)(1.1). However, no challenges to a voted mail-in or absentee ballot can be made at that time by any observer. 25 P.S. § 3146.2b(c).

Given the decisional law on this point and the clarity of the Election Law on this issue, Messrs. Parnell/Negron are not likely to succeed on the merits of Count II.

## 2. Requirement II – Irreparable Harm

A preliminary injunction cannot be issued absent a showing of irreparable harm. The Supreme Court has made it clear that a possibility of irreparable harm is not sufficient – the irreparable harm must be shown to be likely in the absence of an injunction. *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 375, 172 L.Ed. 2d 249 (2008). It is a standard Messrs. Parnell/Negron cannot satisfy.

Messrs. Parnell/Negron do not even allege in their Motion, Complaint, or Brief what the irreparable harm would be. This alone warrants denial of the Motion. The most they say on irreparable harm is in their Proposed Order (ECF # 2-2) that Messrs. Parnell/Negron would face irreparable harm if a TRO is not issued,

> as multiple individuals have already attempted to obtain poll watcher certificates on October 14 and 15, 2020, and were denied access to such certificates. This will leave the Satellite Offices in Allegheny County with no poll watchers to verify the security of the votes cast at these locations.

(ECF 2-2.) This does not aver specific, let alone irreparable, harm to Messrs. Parnell/Negron. In fact, there is no irreparable harm. Pennsylvania's election law more than adequately protects Messrs. Parnell/Negron from suffering irreparable harm as it relates to watching the absentee and mail-in balloting process.


1. <u>Plaintiffs may have watchers present when absentee ballots and mail-in ballots are opened</u>.

> Watchers shall be permitted to be present when the envelopes containing official absentee ballots and mail-in ballots are opened and when such ballots are counted and recorded.

25 P.S. § 3146.8(b).

2.  <u>Plaintiffs may have representatives present at pre-canvassing of absentee and mail-in ballots</u>.

> The county board of elections shall meet no later than seven o'clock A.M. on election day to pre-canvass all ballots received prior to the meeting.  A county board of elections shall provide at least forty-eight hours' notice of a pre-canvass meeting by publicly posting a notice of a pre-canvass meeting on its publicly accessible Internet website.  *One authorized representative of each candidate in an election and one representative from each political party shall be permitted to remain in the room in which the absentee ballots and mail-in ballots are pre-canvassed.*

25 P.S.  3146.8.1.1 (*emphasis added*).

3.  <u>Plaintiffs may have representatives present at post-election canvassing of absentee and mail-in ballots not included in the pre-canvas meeting</u>.

> A county board of elections shall provide at least forty-eights hours' notice of a canvass meeting by publicly posting a notice on its publicly accessible Internet website.  *One authorized representative of each candidate in an election and one representative from each political party shall be permitted to remain in the room in which the absentee ballots and mail-in ballots are canvassed.*

25 P.S. 3146.8.2 (*emphasis added*).

4.  <u>Plaintiffs may have representatives present when absentee and mail-in ballots are pre-canvassed or canvassed by the county board of elections</u>.  In their presence, the board shall:

> 1.  Examine the declaration on the envelope and shall compare the information thereon with that contained in the appropriate absentee voter, mail-in voter, or other permitted voters' list;
> 2.  Verify the proof of identification as required by the Elections Law;
> 3.  Satisfy that the declaration is sufficient, and the information provided verifies the right to vote; and,
> 4.  The county board shall provide a list of the names of electors whose absentee ballots or mail-in ballots are to be pre-canvassed or canvassed.

25 P.S. 3146.8.3.

5.     Plaintiffs are permitted to challenge both absentee ballots (25 P.S. § 3146.2b) and mail-in ballots (25 P.S. § 3150.12b) based upon the qualifications of the elector.

6.     Plaintiffs are permitted to ascertain if any person who appears at a polling place on Election Day previously received a mail-in ballot.   This would give Messrs. Parnell/Negron grounds to challenge that person's right to vote at the polling place.

> Not less than five days preceding the election, the chief clerk shall prepare a list for each election district showing the names and post offices addresses of all voting residents thereof to whom official absentee or mail-in ballots shall have been issued.  Each such list shall be prepared in duplicate, shall be headed "Persons in (give identity of election district) to whom absentee or mail-in ballots have been issued for the election of (date of election)," and shall be signed by him not less than four days preceding the election.  He shall post the original of each such list in a conspicuous place in the office of the county election board and see that it is kept so posted until the close of the polls on election day.  He shall cause the duplicate of each such list to be delivered to the judge of election in the election district in the same manner and at the same time as are provided in this act for delivery of other election supplies, and it shall be the duty of such judge of election to post such duplicate list in a conspicuous place within the polling place of his district and see that it is kept so posted throughout the time that the polls are open.  Upon written request, he shall furnish a copy of such list to any candidate or party county chairman.

25 P.S.§ 3146.2c.

These six different protections in Pennsylvania's Elections Code more than adequately satisfy any function a "poll watcher" would serve at a satellite office and negate Messrs. Parnell/Negron claim of irreparable harm.

Additionally, Pennsylvania's Elections Code is very strict on who may be a poll watcher, how many there may be at a particular location, and what they are permitted to do.   25 P.S. § 2687.  None of those restrictions apply to Messrs. Parnell/Negron and their representatives at

these satellite offices. These satellite offices are fully open to the public, unlike polling places. Messrs. Parnell/Negron can select any people they wish to be their eyes and ears at these locations, without having to get approval from the Board of Elections or establish were these people reside. Messrs. Parnell/Negron, and their representatives, are free to enter and remain at these locations at all times. They are free to observe what is going on. This, in addition to the other provisions of the Election Code set forth above, as well as the proposed "standstill" order the Allegheny County Defendants provided to the Court on October 22, 2020, fully satisfies Messrs. Parnell/Negron's stated concern that they be able to "verify the security of the votes cast" and eliminates their claim of irreparable harm.

Any remaining argument of irreparable harm is defeated by the fact that Messrs. Parnell/Negron have available to them the remedy of intervening in the on-going state-court litigation where this issue is being litigated and that they acknowledge they are aware of (ECF #1, *Complaint*, ¶¶ 72-74). Or Messrs. Parnell/Negron could file their own state-court action. *Donald J. Trump for President, Inc. et al v. Kathy Boockvar et al, 20-cv-00966, --- F.3d. ---, 2020 WL 5997680, * 6, (Oct. 10, 2020, W.D.Pa.)* (In holding that *Pullman* abstention doctrine applied in elections case, this court found plaintiffs had multiple alternative avenues available to them to resolve their legal claims, including filing suit in state court and intervening in a pending state-court case that addressed the same issues).

Messrs. Parnell/Negron cannot meet their burden of showing irreparable harm. Their Motion should be denied.

### 3. Requirement III – Grant of Relief Will Not Do More Harm than Denying It

The relief Messrs. Parnell/Negron seek, requiring that poll watchers be permitted at satellite offices, would be more harmful than denying the relief sought. Under Pennsylvania's Election Code, in order for poll watchers to be present, the satellite offices would have to be found to be polling locations. 25 PS. § 2687(b). If the satellite offices were polling locations, they would be required to be staffed with poll workers (judge of elections, and minority and majority inspectors). 25 P.S. § 2671. This would require staffing of positions that do not currently exist and will not exist until Election Day, November 3, 2020. 25 P.S. § 3048(a).

Thus, the satellite offices (would-be "polling locations") would have to be closed for failure to have the required poll workers. However, the Election Code requires that the Allegheny County Board of Elections maintain an office, and satellite offices as needed, open for electors to obtain and drop off absentee and mail-in ballots. 25 P.S. § 2645(b); 25 P.S. § 3146.5(b)(2). Thus, the Allegheny County Board of Elections is not permitted to close these offices.

This illustrates that there would be greater harm in granting the relief Messrs. Parnell/Negron seek than there would be in denying it. Moreover, the above analysis highlights the fallacy of Messrs. Parnell/Negron's assertion that the Election Code provides them the right to have poll watchers at satellite offices. Such an interpretation falls apart when analyzed as part of Pennsylvania's Election Code as a whole.

### 4. Requirement IV – Granting Relief is in the Public Interest

Finally, the relief Messrs. Parnell/Negron seek is not in the public's interest. The modifications Pennsylvania made to its Election Code this past Spring and Allegheny County Board of Elections' creation of satellite offices was done to make voting in Allegheny County

safer, more convenient, and more secure because of the on-going pandemic. (ECF #1-2, *Resolution of the Board of Elections of Allegheny County*.)

It is in the public's interest for these satellite offices to remain open and accessible for the last two remaining days they are scheduled to be open. Any interest the public might have in "watching" what happens at these locations is already being satisfied in these locations being fully open to the public. Any legitimate interest Messrs. Parnell/Negron might have in watching the collection of ballots is satisfied in the oversight opportunities already provided in the Election Code. *See Irreparable Harm* section *supra.*

The public's interest is not furthered by granting the relief Messrs. Parnell/Negron seek.

WHEREFORE, Messrs. Parnell/Negron's Motion for Temporary Restraining Order should be DENIED.

Respectfully submitted,

/s/ Andrew F. Szefi
Andrew F. Szefi
County Solicitor
Pa I.D. #83747

/s/ George Janocsko
George Janocsko
Pa I.D. #26408

/s/ Virginia Spencer Scott
Virginia Spencer Scott
Pa. I.D. #61647

/s/ Frances M. Liebenguth
Frances M. Liebenguth
Pa. I.D. #314845

ALLEGHENY COUNTY LAW DEPARTMENT

Allegheny County Defendants' Response in Opposition to Motion for TRO - **28**

300 Fort Pitt Commons Building
445 Fort Pitt Boulevard
Pittsburgh, PA 15219
(412) 350-1173
vscott@alleghenycounty.us
aszefi@alleghenycounty.us
gjanocsko@alleghenycounty.us
fliebenguth@alleghenycounty.us