UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Sean Parnell and Luke Negron,<br><br>        Plaintiffs,<br><br>   v.<br><br>Allegheny County Board of Elections; Rich Fitzgerald, in his official capacity as a member of the Allegheny County Board of Elections; Samuel DeMarco III, in his official capacity as a member of the Allegheny County Board of Elections; and Bethany Hallam, in her official capacity as a member of the Allegheny County Board of Elections,<br><br>        Defendants. | No. 20-cv-1905 |

**PROPOSED INTERVENORS-DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER REGARDING POLL WATCHERS**

## I. INTRODUCTION

Plaintiffs have, again at the eleventh hour, asked this Court to grant extraordinary relief to remedy a purported equal protection violation in Pennsylvania's statutorily prescribed poll watcher program, which this Court has already examined. Plaintiffs have alleged neither an injury that would confer standing to have this Court resolve this claim, nor any facts to support it. And even if Plaintiffs had standing to pursue such a claim, which they do not, the challenge is subject to rational basis scrutiny because the law treats all candidates, voters, and poll watchers the same, and, as this Court has recognized, there is no constitutional right to poll watch. In any event, the Allegheny County and Commonwealth of Pennsylvania have more than enough compelling reasons to regulate poll watching in the way the General Assembly drafted the law. This federal court should not disturb Pennsylvania's administration of its election code based on extra-textual suggestions about how Plaintiffs believe the provisions governing poll watchers *should* operate, especially with only 12 days remaining before the November 3 election. For these and the foregoing reasons, relief should be denied on this claim and Allegheny County should be allowed to administer its election as planned.

## II. BACKGROUND

Recognizing that additional offices were necessary to ensure convenient and safe election administration, the Allegheny County Board of Elections decided to open Election Division satellite offices throughout the county where voters can vote and return absentee ballots. *See* Compl. at Ex. A. Plaintiffs Sean Parnell and Luke Negron—congressional candidates running in districts that include parts of Allegheny County—unsuccessfully sought to appoint poll watchers to monitor these satellite offices despite the Election Code's limitation of poll watchers' vote monitoring to election day polling places. *See* 25 P.S. § 2687; *Donald J. Trump for President, Inc.*

*v. Philadelphia Cnty. Bd. of Elections*, No. 200902035 (Pa. Ct. Common Pleas 2020). Plaintiffs sued the Allegheny County Board and its members, alleging in Count II that Defendants violated Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment when they prevented poll watchers from performing their statutory privileges at satellite offices. *See* Compl. at ¶ 95. At a status conference held on October 20, the Court ordered briefing on Count II to address the following issues:

    (1) whether Plaintiffs have standing to assert their claim in Count II;

    (2) if Plaintiffs have standing, whose constitutional rights are being violated and how;

    (3) the level of scrutiny that should apply;

    (4) the governmental interests at issue; and

    (5) the precise relief Plaintiffs request with respect to Count II.

Dkt. No. 12.

### III.    ARGUMENT

**A.    Plaintiffs do not have standing to assert their claim in Count II because they have not suffered an injury in fact.**

As a preliminary matter, this Court lacks jurisdiction because the Republican candidates fail to satisfy the requirements to establish standing under Article III of the Constitution. To demonstrate standing to invoke federal jurisdiction, plaintiffs must show they have suffered an injury-in-fact that is concrete and particularized, fairly traceable to the defendants' challenged conduct, and likely to be redressed by a favorable judgment. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-61 (1992). Where, like here, "the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Lujan*, 504 U.S. at 562 (citations omitted).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1547. That is, the injury "must actually exist" and "must affect the plaintiff in a personal and individual way." *Id.* at 1548. Here, the Republican candidates seem uncertain about their theory of injury and fail to identify any that satisfy Article III's requirements.

First, they suggest their injury is that "they are seeking election," and "if the Court does not act quickly, they will not have any mechanism to enable them to have poll watchers be present at the Satellite Offices during any of the three weekends they were open." Pl. Br. at 4. The unstated assumption of this theory is that Plaintiffs have a statutory right to have poll watchers present at the satellite offices. But Plaintiffs do not allege a statutory violation. Instead, Count II alleges that Plaintiffs are denied equal protection of the laws under the Fourteenth Amendment if poll watchers are permitted at polling places but not at satellite offices. Compl. ¶¶ 87-95. As Plaintiffs allege, however, "The Equal Protection Clause prevents a particular class of individuals from being denied the ability to engage in an activity that other similarly situated individuals are allowed to engage in." Compl. at ¶ 89. Plaintiffs have not alleged how they are treated differently than any other candidates, nor do they allege that the Allegheny County Board of Elections permits some candidates, but not others, to appoint poll watchers to satellite offices. Absent any allegation of disparate treatment, Plaintiffs have not articulated an equal protection injury in their capacity as candidates.

Second, Plaintiffs suggest their injury will be the "Candidates' loss of an opportunity to win a Congressional seat at the general election on November 3, 2020," Pl. Br. at 5, under the attenuated theory that massive fraud similar to what occurred in a 2018 North Carolina race could

result in the invalidation of the election. Again, this is not an equal protection injury because different classes of individuals are not being treated differently. And it is an outlandish analogy. In the race Plaintiffs refer to, Republican political operatives illegally marked absentee ballots, submitted them by mail, and got caught.[1] That fraud was not prevented by poll watchers at early voting sites. And there is no suggestion that such fraud is certainly impending in Allegheny County. "As the Supreme Court has held, this Court cannot 'endorse standing theories that rest on speculation about the decisions of independent actors.'" *Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-CV-966, 2020 WL 5997680, at *2 (W.D. Pa. Oct. 10, 2020) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)); *see also Republican Party of Pennsylvania v. Cortés*, 218 F. Supp. 3d 396, 407 (E.D. Pa. 2016) (rejecting poll watcher claim where theory of fraud was "based on speculation" and "unproven assumption[s]"). There is no basis to credit Plaintiffs' imaginative claim that they will be injured by an invalidated election due to rampant criminality if their requested relief is denied.

Third, Plaintiffs suggest "a candidate for public office may assert the rights of those who wish to vote for him." Pl. Br. at 6. Plaintiffs cite four cases for this proposition, none of which is relevant to the facts alleged here. *Id.* In *Mancuso v. Taft*, 476 F.2d 187, 190 (1st Cir. 1973), the First Circuit held that a candidate had standing to challenge a ballot access restriction that precluded him from running for office and thereby limited the choice of voters. Here, Pennsylvania's decision to restrict poll watchers to polling places does nothing to limit the field of candidates. *Bullock v. Carter*, 405 U.S. 134 (1972), and *Torres-Torres v. Puerto Rico*, 353 F.3d

---

[1] Richard Gonzalez, *North Carolina GOP Operative Faces New Felony Charges That Allege Ballot Fraud*, NPR (July 30, 2019), available at https://www.npr.org/2019/07/30/746800630/north-carolina-gop-operative-faces-new-felony-charges-that-allege-ballot-fraud.

79 (1st Cir. 2003), are also ballot access cases, and they did not even purport to address standing. Finally, *Pennsylvania Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 288, n.10 (3rd Cir. 2002), is not an elections case at all; it concerns whether a state psychiatric society may sue on behalf of member psychiatrists and their patients, and merely includes *Mancuso* in a footnote listing ways that courts have found associational standing in other contexts. Plaintiffs have identified no cases—and there appear to be none—suggesting candidates have standing to assert voters' purported interest in anti-fraud measures that are more expansive than what state statutes allow.

     Fourth, Plaintiffs say they anticipate amending their Complaint to add as plaintiffs two individuals who were denied poll watchers certificates. Of course, there is no doctrine of anticipatory standing—Plaintiffs' claims must rise or fall based on the operative papers before the Court. But the would-be poll watchers face the same inability to state an equal protection problem as the candidates: there is no allegation of disparate treatment. All Allegheny County electors who are selected to serve as poll watchers may participate at polling places but not at satellite offices. Plaintiffs' verbal contortions give away the hollowness of their theory: the most they can say is "there is differential treatment between Satellite Offices . . . and traditional voting precincts." Pl. Br. at 14. But "Satellite Offices" are not plaintiffs (and plainly cannot be added as plaintiffs in an amended complaint), and any metaphysical injury they may suffer from Pennsylvania's poll watching scheme is beyond the adjudication of Article III courts.

     Pennsylvania's poll watching statute treats every voter, poll watcher, candidate, and party the same. Plaintiffs have failed to allege any injury, and certainly not an equal protection injury as necessary to support Count II of their Complaint. Accordingly, their lack of standing deprives this Court of jurisdiction.

**B.     Pennsylvania's decision to limit poll watchers to polling places does not violate anyone's constitutional rights.**

For the same reasons that Plaintiffs lack standing, they fail to identify how anyone's constitutional rights are violated by the General Assembly's decision to limit poll watchers to polling places. As this Court recently reiterated, "there is no individual constitutional right to serve as a poll watcher." *Boockvar*, 2020 WL 5997680, at *67 (quoting *Pennsylvania Democratic Party v. Boockvar*, No. 133 MM 2020, 2020 WL 5554644, at *30 (Pa. Sept. 17, 2020)). Indeed, "it is at least arguable that the Commonwealth of Pennsylvania could eliminate the position of poll watcher without offending the constitution." *Boockvar*, 2020 WL 5997680, at *67 (alterations adopted and quotations omitted). The fact that Pennsylvania chose to permit poll watchers to participate at polling places—but not every other election-related office—was well within its prerogative.

Nor do limitations on poll watching impede the constitutional right to vote; they do not limit electors' range of choices in the voting booth "or make the actual act of casting a vote any harder." *Id.* And, again, there is no equal protection violation because everyone—all voters, poll watchers, candidates, and parties—are treated the same. Voters may cast lawful ballots in person or by mail. See 25 P.S. § 3055 (election day voting by ballot); *id.* § 3056 (election day voting by machine); *id.* § 3146.6 (absentee voting by mail or in person). Poll watchers may challenge voters' qualifications and monitor voting check lists at polling places. *Id.* § 2687(b). Candidates may appoint "two watchers for each election district in which such candidate is voted for." *Id.* § 2687(a). And each political party may appoint three watchers for each district where its candidates are running. *Id.* None of these provisions deny a particular class of individuals the ability to engage in an activity that is permitted for other similarly situated individuals, nor do they impede exercise of the right to vote. Plaintiffs' policy preference that the General Assembly permit poll watchers broader access to challenge absentee voters does not state a constitutional violation.

C. **Pennsylvania's decision to limit poll watchers to polling places is subject to rational basis review.**

As this Court recently held in rejecting another equal protection challenge to poll watcher restrictions, a claim that Pennsylvania's poll watching system denies plaintiffs "'equal access' to the ability to observe polling places in the upcoming election does not, on its own require the Court to apply anything other than rational-basis scrutiny." *Boockvar*, 2020 WL 5997680, at *67. This is because, "[f]or a state law to be subject to strict scrutiny, it must not only make a distinction among groups, but the distinction must be based on inherently suspect classes such as race, gender, alienage, or national origin." *Id.* None of Plaintiffs' attempts to articulate the affected class here— voters, poll watchers, candidates, or types of election administration locations—represents a suspect class. *See id.* Because Plaintiffs have not identified any classification that "jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Id.* at *38 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

Plaintiffs propose strict scrutiny is appropriate, though it is not clear on what basis.[2] First, Plaintiffs cite a string of cases for the proposition that restrictions on the right to vote freely are subject to strict scrutiny. *See* Pl. Br. at 8-9. That is true enough, but Plaintiffs never get around to explaining how restricting poll watchers from satellite offices makes it harder to vote. Plainly, it does not. Plaintiffs do not allege that any voter is unable to cast a ballot at satellite offices due to the fact that poll watchers are not permitted to issue challenges there. The right to vote cases are accordingly inapposite.

---

[2] Plaintiffs cite to *Anderson v. Celebrezze*, 460 U.S. 780 (1983), which provides for strict scrutiny where state action imposes severe restrictions on the right to vote. *Anderson* does not apply here because the poll watcher restrictions do not implicate the right to vote at all.

Second, generously filling in the gaps in their Complaint and Brief, Plaintiffs seem to hesitantly suggest that appointing poll watchers to serve at satellite offices is necessary to prevent fraud. *See* Pl. Br. at 9 (noting without comment that "poll watchers were created to safeguard against voter fraud"). The hesitation is well placed. The absence of one privately preferred mechanism to mitigate fraud from a state's chosen methods of defense is not a constitutional violation (and certainly not an equal protection violation). If Plaintiffs would like to amend Pennsylvania's Election Code to expand the locations where poll watchers may challenge voters, then they should run for General Assembly rather than Congress, and take up there the task of legislative reform. Unsupported speculation about the possibility of voter fraud is not an injury warranting strict scrutiny of duly enacted election statutes. *See Boockvar*, 2020 WL 5997680, at *2 (upholding statutory limits on poll watchers because "the job of an unelected judge isn't to suggest election improvements, especially when those improvements contradict the reasoned judgment of democratically elected officials").

**D.   Pennsylvania state and county governments have an interest in the orderly administration of election laws consistent with the Election Code.**

Pennsylvania has a surplus of rational justifications for restricting poll watchers from satellite offices. First, satellite offices may not be large enough to accommodate poll watchers on behalf of each candidate and party. Second, poll watchers are not necessary in satellite offices because professional county board of elections personnel are present, and they have the training and experience to ensure voters comply with the Election Code. Third, it is rational to restrict poll watchers from monitoring the completion and return of absentee ballots because it would be impossible for poll watchers to be present at every time and place where a voter marked a ballot—often in the privacy of the home or workplace—and to be present at every instance in which a

voter returned the ballot in a U.S. Postal Service mailbox or other drop-off location. In its considered judgment, the General Assembly determined there is space, opportunity, and value in permitting poll watchers to monitor polling places on election day. This limited allowance does not require the gates be thrown open by a court to permit poll watchers to roam wherever they suspect voting irregularities could theoretically be afoot.

**E.     The relief Plaintiffs require is contrary to the Election Code and is not compelled by the federal constitution.**

The relief that Plaintiffs demand under Count II—namely, a permanent injunction prohibiting the Allegheny County Board of Elections from denying poll watchers at its satellite offices, *see* Pl. Br. at 15—has no basis in law. As a state court has already conclusively determined, satellite offices are not "polling places" where poll watchers are permitted as that term is used in the Election Code. *Donald J. Trump for President, Inc. v. Philadelphia Cnty. Bd. of Elections*, No. 200902035 (Pa. Ct. Common Pleas 2020). In any event, Plaintiffs' Complaint does not allege that Defendants are failing to comply with state law. Instead, Plaintiffs claim that restricting poll watchers from satellite offices violates the Fourteenth Amendment's Equal Protection Clause. It does no such thing. Plaintiffs can identify no disparate treatment of any group or burden on a fundamental right as a claim under that clause requires. Pennsylvania's rational regime should not be subject to judicial second-guessing on the eve of an election based on the policy preferences of candidates. The requested relief should be denied.

## IV.     CONCLUSION

For the reasons stated above, Plaintiffs' Motion for a Temporary Restraining Order should be denied as to Count II.

Dated: October 22, 2020.                    Respectfully submitted,

/s/ _____

Justin T. Romano
PA ID No. 307879
justin@arlawpitt.com
Marco S. Attisano
PA ID No. 316736
marco@arlawpitt.com
429 Fourth Avenue, Suite 1705
Pittsburgh, PA 15219
Phone: (412) 336-8622
Fax: (412) 336-8629

Marc E. Elias*
Uzoma Nkwonta*
Stephanie Command*
Courtney Elgart*
Jacob D. Shelly*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
unkwonta@perkinscoie.com
scommand@perkinscoie.com
celgart@perkinscoie.com
jshelly@perkinscoie.com

*Counsel for Proposed Intervenor*

*Motions for Admission Pro Hac Vice Forthcoming*

- 12 -

## CERTIFICATE OF SERVICE

  I hereby certify that on Thursday, October 22, 2020, I filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                /s/ _____
                Counsel for Proposed Intervenors