**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SEAN PARNELL, individually and as a candidate for Pennsylvania's 17th Congressional District and on behalf of all citizen electors of Allegheny County, Pennsylvania; LUKE NEGRON, individually and as a candidate for Pennsylvania's 18th Congressional District and on behalf of all citizen electors of Allegheny County, Pennsylvania; BRIAN CHEW; and JAY HAGERMAN,<br><br>        Plaintiffs,<br><br>    v.<br><br>ALLEGHENY COUNTY BOARD OF ELECTIONS; RICH FITZGERALD, in his official capacity as County Executive of Allegheny County and as a member of the Allegheny County Board of Elections; SAMUEL DeMARCO III, in his official capacity as a member of the Allegheny County Board of Elections; and BETHANY HALLAM, in her official capacity as a member of the Allegheny County Board of Elections,<br><br>        Defendants. | CIVIL ACTION<br><br>Case No.:  2:20-cv-1570<br><br>The Hon. J. Nicholas Ranjan<br>United States District Judge |

**FIRST AMENDED COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF**

**Introduction**

1.     In 2019, the Pennsylvania General Assembly amended the Election Code, via Act 77 of 2019, to provide qualified electors with the ability to vote via mail-in ballots without the requirement of first demonstrating their expected absence from the voting district on Election Day. *See* 25 P.S. §§ 3150.11-3150.17.

2.      In furtherance of Pennsylvania voters' ability to vote via mail-in ballots, on September 17, 2020, the Allegheny County Board of Elections ("**Board of Elections**") unanimously voted to open additional election offices ("**Satellite Offices**") due to the ongoing pandemic. A copy of the resolution is attached as Exhibit "**A**."

3.      These Satellite Offices will enable the citizens of Allegheny County to exercise their voting rights at multiple new locations across the county, including: the "North Park Ice Rink, South Park Ice Rink, DPW Garage #2, CCAC Homewood, CCAC South, Boyce Park Ski Lodge, and the Shop 'n Save Hill District." *Id.*

4.      The Satellite Offices have been open on October 10, 11, 17, and 18, and are scheduled to be open this weekend on October 24 and 25, 2020.

5.      Importantly, the Satellite Offices will enable the citizens of Allegheny County to actually *cast their ballot* at these locations.[1]



---

[1] The image in the Complaint was taken from the Allegheny County website link on October 15, 2020 found at this address: https://www.alleghenycounty.us/elections/additional-election-offices.aspx.

6.     According to the Allegheny County website, "[p]rivacy screens will be set up on the counter to allow the voter to complete their ballot in secret." *Id.*

7.     "Once voted…the ballot is folded and placed in a security envelope which is then placed inside of a second envelope with the voter's declaration printed on the back." *Id.*

8.     "The voter will complete and sign the declaration before returning the envelope to the Elections staff." *Id.*

9.     "The voter's record will be updated to show that the individual's ballot has been returned." *Id.*

10.    Based upon the foregoing, it is incontrovertible that the Satellite Offices are places where the Citizens of Allegheny County can vote – at least for this year.

11.    There is no question that thousands of voters have already cast their vote at the Satellite Offices, and many more will do so this weekend.

12.    Plaintiffs, Sean Parnell ("**Mr. Parnell**") and Luke Negron ("**Mr. Negron**") (collectively referred to as "**Candidate Plaintiffs**"), are seeking election to the 17th and 18th Congressional Districts of Pennsylvania respectively in the upcoming November 3, 2020 general election.

13.    As current candidates for office, Mr. Parnell and Mr. Negron have standing in this case as representatives of a political body (Republican Party) and a body of citizens (electors of Allegheny County), and as voters themselves.

14.    The Candidate Plaintiffs have a direct interest in the outcome of the election and in this litigation by requesting the Court protect their constitutional rights by ensuring that the integrity of this year's election is upheld at the Satellite Offices in Allegheny County.

15.     The Candidate Plaintiffs also have a direct interest in this litigation because the $10 fee to challenge the 28,879 erroneous mail-in ballots issued by Defendants creates an undue burden on their ability to exercise their rights.

16.     Specifically, the Candidate Plaintiffs would be required to pay at least $288,790, and as much as $577,580, according to their only other available remedy under the Election Code.

17.     Plaintiffs, Brian Chew ("**Mr. Chew**") and Jay Hagerman ("**Mr. Hagerman**") (collectively referred to as the "**Poll Watcher Plaintiffs**") were denied poll watcher certificates by Defendants.

18.     In fact, to date, there have been no poll watchers allowed at the Satellite Offices.

19.     On October 14, 2020 and October 15, 2020, Mr. Chew and Mr. Hagerman attempted to obtain poll watchers certificates for the purpose of serving as poll watchers at the Satellite Offices.

20.     Mr. Chew and Mr. Hagerman were denied poll watchers certificates on the same date that they requested them. A copy of Mr. Chew and Mr. Hagerman's affidavits are attached as Exhibit "**B**."

21.     As stated above, there is no question that the Satellite Offices in Allegheny County allow voters to cast their ballots.

22.     Allowing poll watchers at traditional polling locations, but not allowing poll watchers at the Satellite Offices constitutes disparate treatment.

23.     Further, allowing poll watchers at traditional polling locations, but not allowing poll watchers at the Satellite Offices violates the Candidate Plaintiffs constitutional rights under the Equal Protection Clause of the 14th Amendment to the Constitution of the United States.

24.     Additionally, there is no question that 28,879 erroneous mail-in ballots were issued by Defendants.

25.     The Defendants' actions force the Candidate Plaintiffs to pay at least $288,790 and as much as $577,580 to challenge the erroneous ballots.

26.     The Defendants' actions have also denied the Poll Watcher Plaintiffs their rights.

27.     All the Plaintiffs in this action assert that the 28,879 (or more) erroneously issued ballots in this election constitute a substantial threat to the integrity and security of the results in the Presidential Election, the Congressional Election(s), and the "down-ballot" races.

28.     As such, these ballots and their mail-in replacements are being improperly handled, and Defendants have, and continue to violate the provisions of the Election Code of the Commonwealth of Pennsylvania regarding the same.

29.     Although there has been previous election litigation to date, this specific issue has not been addressed by either the state or federal courts in the Commonwealth of Pennsylvania.

30.     Accordingly, it is critical that these issues be decided before the November 3, 2020 general election, particularly, in light of more than 28,000 ballots recently being erroneously sent to voters in Allegheny County and before the Satellite Office are no longer being used after this weekend.

31.     Taking such action will serve to protect the individual votes of each of the affected voters and will further and advance fair, free, and constitutionally required Federal (and State) elections.

### Jurisdiction and Venue

32.     Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988.

33.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

34.     This Court has jurisdiction to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

35.     This Court has personal jurisdiction over the named individual Defendants, who are sued in their official capacities only.

36.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## **Parties**

37.     Plaintiff, Sean Parnell, is a citizen of the United States, and is a current candidate for Pennsylvania's 17th Congressional District, which covers portions of Allegheny County, Pennsylvania. He is suing as a candidate for the United States House of Representatives and on behalf of all citizen electors of Allegheny County.

38.     Plaintiff, Luke Negron, is a citizen of the United States, and is a candidate for Pennsylvania's 18th Congressional District, which covers portions of Allegheny County, Pennsylvania. He is suing as a candidate for the United States House of Representatives and on behalf of all citizen electors of Allegheny County.

39.     Plaintiff, Brian Chew, is a resident of, and registered voter in, Allegheny County.

40.     Plaintiff, Jay Hagerman, is a resident of, and registered voter in, Allegheny County.

41.     Defendant, Allegheny County Board of Elections is an administrative board charged with the conduct of elections in Allegheny County, Pennsylvania.

42.     Defendant, Rich Fitzgerald, is the County Executive of Allegheny County and serves as a member of the Allegheny County Board of Elections. He is sued in his official capacity only.

43.     Defendant, Samuel DeMarco III, is a member of the Allegheny County Council and serves as a member of the Allegheny County Board of Elections. He is sued in his official capacity only.

44.     Defendant, Bethany Hallam, is a member of the Allegheny County Council and serves as a member of the Allegheny County Board of Elections. She is sued in her official capacity only.

## Factual Background

**A.     The Allegheny County Board of Elections Approved Satellite Offices.**

45.     The averments contained in the preceding Paragraphs are incorporated by reference as if fully set forth herein.

46.     On September 17, 2020, the Board of Elections voted unanimously to open Satellite Offices. *See* Ex. A.

47.     The Board of Elections made the recommendation to open the Satellite Offices "because of concerns related to the pandemic and to ensure that voters have additional safe and accessible options to vote over-the-counter or return their voted ballots." A copy of the release is attached hereto as Exhibit "**C**."

48.     The Board of Elections focus was "improving…processes, confirming polling locations, recruiting, assigning and training poll workers, and taking additional measures to further strengthen the integrity of the election system." *See* Ex. C.

49.     The Satellite Offices will "have access to the Statewide Uniform Registry of Electors (SURE) system and will be staffed by county employees." *Id.*

50.     Voters will not be allowed to register at the Satellite Offices, like at the main Elections Office in Allegheny County, but they will be allowed to vote.

**B.      The Satellite Offices Allow for In-Person Voting.**

51.      "Offices will be able to accommodate over-the-counter voting and ballot return and will serve voters regardless of where they live in the county." *Id.*

52.      "Over-the-counter voting entails a voter going to the counter in the Elections Division and applying in-person for a mail-in or absentee ballot."[2]

53.      "The application is the same as the one found online and can be completed in advance of going to the County Office Building." *Id.*

54.      "Once the application is completed and submitted to the Elections staff, the application will be processed using the SURE system to ensure the voter is registered to vote, hasn't already applied for a ballot, or has any other barriers to voting." *Id.*

55.      "Once reviewed and approved, the ballot for that person's municipality, ward and precinct will be provided to the voter along with a security and declaration envelope, and instructions for voting." *Id.*

56.      "Privacy screens will be set up on the counter to allow the voter to complete their ballot in secret." *Id.*

57.      "Once voted, the ballot is folded and placed in a security envelope which is then placed inside of a second envelope with the voter's declaration printed on the back." *Id.*

58.      "The voter will complete and sign the declaration before returning the envelope to Elections staff." *Id.*

59.      "The voter's record will be updated to show that the individual's ballot has been returned." *Id.*

---

[2] https://www.alleghenycounty.us/elections/additional-election-offices.aspx

60.     "Voted ballots are [supposed to be] secured with the Elections Division before being transported to the Elections Warehouse where they are stored in a locked room…[and] remain there until 7AM on Election Day [November 3, 2020] when ballots may begin to be opened and counted." *Id.*

C.     **The Election Code Allows for "Poll Watchers" to be Present Where Votes are Cast.**

61.     The position of "poll watcher" is codified in the Commonwealth of Pennsylvania under 25 P.S. § 2687 in the Election Code.

62.     Poll watchers may be present "at any public session or sessions of the county board of elections, and at any computation and canvassing of returns of any primary or election and recount of ballots or recanvass of voting machines" under the Election Code. *See* 25 P.S. § 2650.

63.     One poll watcher for each candidate, political party, or political body may "be present in the polling place…from the time that the election officers meet prior to the opening of the polls…until the time that the counting of votes is complete and the district register and voting check list is locked and sealed." *See* 25 P.S. 2687(b).

64.     A poll watcher "shall be authorized to serve in the election district for which the watcher was appointed and, when the watcher is not serving in the election district for which the watcher was appointed, in any other election district in the county in which the watcher is a qualified registered elector." *See* 25 P.S. § 2687(b).

65.     "Watchers allowed in the polling place under the provision of [the Election Code], shall be permitted to keep a list of voters and shall be entitled to challenge any person making application to vote and to require proof of [her] qualifications as provided by [the Election Code]." *See* 25 P.S. § 2687.

66.     Watchers are permitted to "inspect the voting check list and either of the two numbered lists of voters maintained by the county board." *Id.*

67.    In sum, poll watchers are critical to the integrity of all elections – and even more critical during this election – in the midst of a pandemic.

**D.    Defendants Will Not Allow Plaintiffs to have Poll Watchers at the Satellite Offices.**

68.    Plaintiffs desire to have poll watchers at the Satellite Offices.

69.    Mr. Chew and Mr. Hagerman attempted to obtain poll watchers certificates on October 14 and 15, 2020, but were denied. *See* Ex. B.

70.    Defendants' denial of the Candidate Plaintiffs' right to have poll watchers at the Satellite Offices constitutes disparate treatment of voting locations in Allegheny County.

71.    Defendants' denial of Candidate Plaintiffs' right to have poll watchers at the Satellite Offices violates their constitutional rights along with the constitutional rights of all citizen voters in Allegheny County.

72.    Defendants' denial of the Poll Watcher Plaintiffs' right to be poll watchers also constituted disparate treatment and violations their constitutional rights.

**E.    Defendants Have Already Mishandled Over 28,000 Ballots.**

73.    On October 14, 2020, the Board of Elections announced that 28,879 voters in Allegheny County received incorrect ballots. A copy of the Board of Elections press releases and statements are attached as Exhibit "**D**."

74.    Defendants' actions create an undue burden on the Candidate Plaintiffs' ability to challenge the mishandled ballots – namely, that they would have pay at least $288,790 and as much as $577,580 to challenge the erroneous ballots.

75.    The Elections Code provides that this error should have been handled by issuing these affected voters a provisional ballot or setting aside the ballots making them available to be challenged.

76.     Instead, the Board of Elections determined, in an arbitrary and capricious manner, to provide a reissued ***official, non-provisional ballot*** to voters who had already cast their votes in the election – or at least already received an official ballot.

77.     Additionally, the Board of Elections decided to access, handle, review, and inspect the previously issued sealed official mail-in ballots, in some manner, prior to election day because they've identified the specific voters who received the errant ballots and sent them new ones.

78.     Additionally, all of these decisions have been made while voting continues; and specifically continues at the Satellite Offices without the presence of poll watchers.

**F.     These Issues are Ripe and are Justiciable before this Court.**

79.     Plaintiffs recognize that courts in the Western District have recently abstained from election litigation. *See Donald J. Trump for Pres., Inc. v. Boockvar*, 2:20-CV-966, 2020 WL 5997680, at *74 (W.D. Pa. Oct. 10, 2020) (where this Court held that the prohibition of poll watchers from being present at the county election offices, satellite offices, and designated ballot-return sites, "is directly related to the unsettled state-law question of whether drop boxes and other satellite locations are "polling places" as envisioned under the Election Code," and "[i]f they are, then Plaintiffs may be right in that poll watchers must be allowed to be present.").

80.     In that case, this Court also stated it found "comfort that Plaintiffs will be able to seek timely resolution of these issues," and relied on a lawsuit filed in the Court of Common Pleas of Philadelphia as support for its comfort. *Id.*

81.     However, the issues that were before this Court in *Trump v. Boockvar*, and that were before the Court of Common Pleas of Philadelphia, are distinguishable from the issues raised in this lawsuit because the Allegheny County Board of Elections has ***expressly denied*** poll

watchers from being present in a location where ballots are cast – and are continuing to be cast – *this weekend.*

82.     Further, the Court of Common Pleas of Philadelphia analyzed satellite offices that allowed for voters to both register and vote – which is distinguishable from Allegheny County's allowance only for voters to cast their ballot at the Satellite Offices.

83.     These cases are also distinguishable because the Board of Elections has mishandled over 28,000 ballots.

84.     Unlike the Court in *Trump v. Boockvar*, Plaintiffs do not have comfort that their constitutional rights – along with the constitutional rights of all the citizens of Allegheny County – are being protected and time is running out – or may have already ran out – to prevent immediate and irreparable harm.

**COUNT I – ALL PLAINTIFFS v. ALL DEFENDANTS**
**Violation of Equal Protection – Erroneous Ballots**

85.     Plaintiffs incorporate the foregoing paragraphs as though the same were fully set forth at length herein.

86.     The Board of Elections identified 28,879 voters within Allegheny County that received incorrect absentee and mail-in ballots.

87.     Prior to the public announcement, the Board of Elections began to issue revised official ballots to voters who already had been provided official ballots.

88.     The Board of Elections issued revised ballots without knowing whether the recipient voters had already voted.

89.     On October 14, 2020, the Board of Elections, and its employees, physically accessed, handled, reviewed, and inspected the sealed official ballots in violation of the Election Code.

90.     The Board of Elections also segregated a portion of the ballots.

91.     The Board of Elections, as stated above, is legally obligated to "safely keep the ballots in sealed or locked containers until they are to be canvassed by the county board of elections."

92.     Defendants' conduct with regard to the mishandled ballots violates the Equal Protection Clause of the 14th Amendment to the United States Constitution.

93.     In order to address Defendants' violation of the Election Code, Defendants have asserted that Plaintiffs' must deposit the sum of Ten Dollars ($10.00) per challenged ballots. *See* 25 P.S. § 3146.8.

94.     Defendants' conduct also creates an undue burden on Plaintiffs' rights to challenge the mishandled ballots by making them pay an unconstitutional and exorbitant fee – at least $288,790 and as much as $577,580, for an error committed by Defendants.

95.     As a result of Defendants' conduct, the parties are faced with a dilemma on how to treat the ballots cast by electors who used erroneous ballots, if those electors do not utilize the replacement ballots.

96.     In such cases, electors may have erroneously cast votes for candidates in an incorrect district while still casting votes for legally correct candidates on the same ballot.

97.     There is no legal obligation for electors who have cast their vote using erroneous ballots to recast their votes on the corrected ballot and some electors may not use the corrected ballot.

98.     The immediate resolution of this issue by this Court is required to ensure correct and legally appropriate tabulation of all such ballots in Allegheny County for the 2020 General Election.

## COUNT II – ALL PLAINTIFFS v. ALL DEFENDANTS
### Violation of Equal Protection – Poll Watchers

99.     Plaintiffs incorporate the foregoing paragraphs as though the same were fully set forth at length herein.

100.    The Equal Protection Clause requires governments to act in a rational and non-arbitrary fashion.

101.    The Equal Protection Clause prevents a particular class of individuals from being denied the ability engage in an activity that other similarly situated individuals are allowed to engage in.

102.    Defendants' conduct with regard to poll watchers violates the Equal Protection Clause of the 14th Amendment to the United States Constitution.

103.    Defendants' conduct fails to permit the Candidate Plaintiffs to have poll watchers at the Satellite Offices, but not other traditional polling places.

104.    Defendants' conduct expressly denied the Poll Watcher Plaintiffs ability to be poll watchers without justification.

105.    Further, Defendants are preventing Plaintiffs the ability to have poll watchers at the Satellite Offices despite voters being allowed to cast in-person votes at the Satellite Offices.

106.    Poll watchers will be allowed to be present at other polling places throughout Allegheny County.

107.    Defendants' plan is an arbitrary decision-making process that allows poll watchers in some polling places, but not others, including the Satellite Offices.

108.    Defendants' actions will cause Plaintiffs to be deprived of their right to use poll watchers under the Election Code violating the Equal Protection Clause.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, Allegheny County Board

of Elections, Rich Fitzgerald, Samuel DeMarco III, and Bethany Hallam as follows:

1.  For the Court to determine the whereabouts and security of the erroneous ballots already cast or hereafter cast or returned; and,

2.  A Declaratory Judgment directing Defendants on how to treat absentee and mail-in ballots cast on erroneous ballots but containing valid and legally cast votes of appropriate candidates.

3.  A Declaratory Judgment that the actions of the Defendants, including, but not limited to the denial of poll watchers, watchers and/or other representatives at the Offices, Satellite Offices and Polls in Allegheny County is unconstitutional; and,

4.  A Declaratory Judgment that the rights of the voters of Allegheny County have been violated by Defendants' actions in imposing exorbitant fees on Plaintiffs, or any other candidate, who wishes to challenge the erroneous ballots or their replacement ballots; and,

5.  A Temporary Restraining Order to enjoin Defendants from engaging in any such future violations and declaring all of the erroneous ballots and the replacement ballots as "challenged" (without requiring funds to be deposited by Plaintiffs or other candidates) and treated as "provisional ballots" under the Election Code of the Commonwealth; and,

6.  A Permanent Injunction to prohibit Defendants from denying poll watchers, watchers and/or other representatives at the Offices, Satellite Offices and Polls in Allegheny County; and,

7.  Order Defendants to immediately issue watchers certificates to the individuals listed below:

    For Candidate Parnell:          Robert Howard
                                    Jason Singer
                                    Kim Gatesman
                                    Barbara Heinz
                                    Dawn Davies
                                    Amanda Kelly
                                    Elaine Gorski
                                    Ann Murphy
                                    Ann Porter
                                    Quinn Ritchie

| | |
|---|---|
| For Candidate Negron: | Rachael Armstrong |
| | Lynne Ruffing |
| | Eric Williams |
| | Barb Lloyd |
| | Jim Means |
| | Sue Means |
| | Frank Huchrowski |
| | Beth Conway |
| | Larry Conway |

along with any other eligible individual applying for a poll-watcher certificate.

8.     Order Defendants to properly secure all mail-in ballots and the erroneous ballots and their replacement ballots as required by law, and to prevent continued violations of the Election Code by Defendants as described herein; and,

9.     An award of costs and expenses, including reasonable attorneys' fees, under 42 U.S.C. §§ 1983 and 1988; and,

10.    Such other relief as this Court deems appropriate.

Respectfully Submitted,

**DILLON, MCCANDLESS, KING,
COULTER & GRAHAM, LLP**

*Special Counsel for the Amistad Project of
the Thomas More Society*

Dated: October 22, 2020              By: /s/ Thomas W. King, III
                                        Thomas W. King, III
                                        PA. I.D. No. 21580
                                        Thomas E. Breth
                                        PA. I.D. No. 66350
                                        Jordan P. Shuber
                                        PA. I.D. No. 317823

*Counsel for Plaintiffs*